No. 47,940

AMORTIBANC INVESTMENT COMPANY, INC., *Plaintiff-Appellant*, v. SAYED S. JEHAN, et al., *Defendants-Appellees*.

(551 P. 2d 918)

Opinion filed June 12, 1976.

*John W. Jordan*, of Learned, Craig and Foley, P. A., of Wichita, argued the cause, and *Edmund R. Learned*, of the same firm, was with him on the brief for the appellant.

*Douglas Mosier*, of Coombs, Lambdin and Kluge, Chartered, of Wichita, argued the cause for the Jehans, and *Orlin L. Wagner*, of Wichita, argued the cause for Star Lumber and Supply Company, Inc., and were both on the brief for the appellees.

The opinion of the court was delivered by

PRAGER, J.: This is an action brought to recover judgment for sums due on a mortgage note, for determination of priorities of liens, and for the foreclosure of a real estate mortgage. The plaintiff-appellant is Amortibanc Investment Company, Inc., a Wichita investment company. Original defendants in the action are Dr. Sayed S. Jehan and his wife, Yasmeen Jehan, who executed the note and mortgage, and eight subcontractors and materialmen claiming liens on the real estate described in the mortgage.

The facts in the case are somewhat complicated and are important for the determination of the issues raised on this appeal. They are essentially as follows: Some time during the month of February 1972, the defendants Jehan consulted with Homefinders,

a Wichita real estate agency, about arranging for the construction of a new home. Homefinders brought the Jehans together with personnel from Clewal Construction, Inc., a Wichita builder. On February 25, 1972, Clewal Construction and the Jehans entered into a written contract by the terms of which Clewal agreed to build the Jehans a new home. The contract was prepared by Homefinders on an ordinary real estate contract form. The important terms of the contract were filled in the blank spaces in the printed form with a fountain pen. The property to be sold was designated as "new construction." The consideration to be paid by the Jehans was $47,600 to be paid in the following manner:

"Buyer to pay ten percent down (10%) and secure a ninety percent (90%) conventional loan at the lowest possible interest rate for a period of thirty (30) years. Buyer agrees to preclose loan at Amortibanc Investment Company so builder can draw funds during construction. Builder agrees to pay interest on these funds at final closing. The contract is subject to the approval of the plans and specifications by both buyer and seller and on securing the above loan. The entire contract is contingent on buyer's passing an exam on June 8 and 9 which will qualify him to be granted a license as a practicing M. D. in the state, otherwise it becomes null and void and the earnest money shall be returned to the buyer."

The contract further provided that possession shall be given "at closing" and that the contract shall be closed within a reasonable time after proof of merchantable title is submitted to buyer and in any event no later than November 15, 1972. The buyer deposited $200 earnest money with Homefinders. The contract then recited as follows in the blank space designated other conditions of contract: "This contract excludes the cost of the building site. Buyer to pay his own loan cost." The contract was signed by Walter Suter, president, on behalf of Clewal Construction, Inc., and by the Jehans. The requirement that the Jehans agree to "preclose" a loan at Amortibanc was placed in the contract at the insistence of Clewal Construction, Inc. It is important to note that the builder, Clewal, agreed to pay interest up to the time of final closing on any funds drawn during construction.

On July 23, 1972, the Jehans entered into a contract for the purchase of real estate upon which they intended to have their home built. The Jehans acquired title to the real estate by deed dated August 24, 1972. The purchase price for the land is stated in the real estate purchase contract to be $4200.

On September 29, 1972, the Jehans went to the office of the plaintiff Amortibanc to "preclose" a loan with Amortibanc as required

by the construction contract. At that time, according to the testimony of the defendant, Dr. Sayed S. Jehan, the employees of Amortibanc advised them that the Jehans would not be responsible for the loan unless the house was completed. In this regard Dr. Jehan's exact testimony as taken verbatim from the record was as follows:

"They told us that our loan had been approved and what we are signing now in fact is that when the house is completed that we would be responsible for the loan, we would assume the loan and we would not be responsible for anything unless the house is completed and that their attorney of Amortibanc was interested that the money is properly spent and that the subcontractor and everybody is paid and there would be no trouble; if something happened, we would not be responsible for anything. And then they put a paper in front of us and told us to sign them and said everything is okay. And it took us five minutes to sign all the papers, and they told us those papers would be explained to us. I must say I was quite new in the country and trusted everybody and went ahead and signed the papers without questioning."

At the time of the trial in July 1974, Dr. Jehan testified that he was a native of Pakistan and had been in the United States four and one-half years. Amortibanc prepared the papers for the Jehans to sign. On September 29, 1972, the Jehans signed a first mortgage note dated September 29, 1972, which provided for payment of $45,000 with interest at the rate of 7¾ percent per annum. Installment payments of principal and interest in the sum of $322.65 were to commence on April 1, 1973, and a like sum to be paid on the first day of each month thereafter until paid. The date of April 1, 1973, is important because as will be noted later Clewal agreed with Amortibanc that the building was to be completed by March 29, 1973. Clewal further agreed with Amortibanc to pay all interest to the date of completion and if not completed by March 29, 1973, Clewal was to pay all principal payments until completed. After signing the note the Jehans signed a mortgage dated September 29, 1972, in the amount of $45,000. This mortgage was subsequently filed for record on October 2, 1972.

Following the execution of the note and mortgage the Jehans signed a document which has been designated by the parties as a "disbursement authorization." This instrument dated September 29, 1972, was in the form of a letter directed to Amortibanc Investment Company, Inc., and signed by the Jehans. The body of the letter read as follows:

"You are hereby authorized by the undersigned to disburse from the proceeds of the above loan such sums as may be requested by Clewal Con-

struction, Inc. hereinafter referred to as Contractor, to cover portions of work completed in the construction of the dwelling house being constructed on the mortgaged premises that is at 2552 N. Dellrose, Wichita, Kansas. Such disbursements may be made by you directly to said contractor upon your receipt of Certificate of Inspection of AMORTIBANC INVESTMENT COMPANY, INC., your Appraiser, that the work for which contractor has requested payment is completed.

"It is understood and stipulated by the undersigned that your disbursement of any portion of the funds constituting the proceeds of the above loan in accordance with the above authorization is a disbursement of the loan proceeds to the undersigned even though your payment of such disbursement is directly to said contractor, and that you are released from any and all liability for any loss the undersigned may sustain or incur by reason of failure of said contractor to apply the proceeds of any such disbursement to payment of bills for labor and/or materials incurred in such construction, or the correctness of any amounts represented by said contractor to be due and owing for such construction."

The next important event occurred on October 29, 1972. On that date Amortibanc and Clewal Construction, Inc. entered into a construction loan agreement by which Clewal as builder agreed to commence construction on Jehans' real estate in accordance with specifications submitted to the Eureka Federal Loan and Savings Association. This construction loan agreement then provided as follows:

"It is understood and agreed that Sayed S. Jehan and Yasmeen Jehan Husband and wife (buyers), hereinunder called Buyers, have entered into a real estate purchase contract with Builder, whereunder Builder will construct and sell to Buyers the residence and real estate described above; that Amortibanc will loan to Buyers the principal sum of $45,000.00 (permanent loan amount) to be represented by a promissory note of even date herewith, and secured by a real estate mortgage of the same date on the above described property.

"In consideration of the execution by Buyers of said note and mortgage, Amortibanc agrees to advance the proceeds of said loan to Buyers as construction advances. Such advances may be made direct to Builder pursuant to the authorization signed by Buyers. The advances so to be made by Amortibanc to Builders shall not exceed three in number and the total amount thereof shall not exceed $37,850.00 (construction loan amount). The amount of each such advance shall be computed on the basis of the degree of completion of said house at the time the advance is requested by Builder. The percent of completion of construction shall be determined by an inspection made by Amortibanc and such percentage figure shall then be applied to $37,850.00 (construction loan amount) and the advance to be made shall be the resulting figure.

"Builder agrees to pay interest on said advances at the rate of 7¾% per annum from the date he receives such advances until March 29, 1973 (date of completion), or such earlier date as said house may be completed and

possession delivered to Buyers. Provided, however, in the event Builder fails to complete the construction of said house by March 29, 1973 (date of completion), he will make the principal payment due on the above mentioned $45,000.00 (permanent loan amount) note, April, 1973 (due date of first payment), together with accrued interest thereon from March 29, 1973 (date of completion), at the rate of 7¾% per annum, and Builder will make each subsequent monthly principal payment on said note, together with interest on the unpaid principal thereof at the rate of 7¾% per annum, until said house is completed as provided by the plans and specifications and possession delivered to the Buyers.

"It is understood and agreed that Builder will so complete and deliver possession of said house by March 29, 1973 (date of completion).

"Concurrently with payment of the first advance by Amortibanc to Builder, Builder will pay Amortibanc a commitment fee of $378.50 (1% of construction loan amount), and all other costs and expenses in setting up said loan. Builder will provide Amortibanc with an original Builder's Risk Policy prior to the date of the first draw. For each draw requested by Builder in excess of the three allowed, there will be a service charge of Ten Dollars."

The loan agreement is then signed for Amortibanc by its executive vice president, Paul E. Hampel, and by Walter H. Suter, president, for Clewal Construction, Inc. The record shows that this construction loan agreement was prepared by Amortibanc.

The record is not clear as to the exact date when the construction of the home by Clewal commenced. It was some time in October of 1972. Over the following ten months Amortibanc made six advance payments to Clewal pursuant to their construction loan agreement. The total of these six advances amounted to $26,188.50. All of the disbursements were made directly from Amortibanc to Clewal and the Jehans were never furnished a notice of the date or amount of any disbursement nor a copy of the inspection reports made by Amortibanc's inspector prior to such disbursements being made. The trial court found that certain lien affidavits furnished by Clewal were defective and inadequate in a number of particulars. During this period when it became obvious that construction could not be completed by the anticipated completion date of March 29, 1973, Clewal and the Jehans executed an agreement extending the date of completion to October 1, 1973. No other agreements were executed by either Amortibanc, Clewal or the Jehans regarding this delay in the completion of construction of the Jehans' house.

Some time during the course of the construction Clewal began having financial difficulties. It did not pay all of its various subcontractors and materialmen. After August of 1973 Clewal abandoned the construction of the Jehans' house and thereafter six sub-

contractors and materialmen filed mechanics' liens against the Jehan real estate in the amount of $10,899.43. The validity of these liens is undisputed. The liens are held by various defendants in the case. Only one of them, Star Lumber and Supply Company, Inc., has made an appearance on appeal in this court.

After Clewal abandoned the job no further work was performed for completion of the house and the house remains in the state of being only 68 percent completed as of the time of the trial. Amortibanc apparently decided that it could not collect from Clewal Construction the payment of principal and interest due on the amount of its construction advances to Clewal. Having received no payments for almost a year, Amortibanc on March 12, 1974, filed this action praying in its petition for judgment against the defendants Jehan in the total amount of $26,188.50 plus interest, that sum being the total amount of the construction advancements made to Clewal with interest. It also prayed for foreclosure of Jehans' real estate mortgage to satisfy any judgment obtained against the Jehans. In the action Amortibanc also prayed for a determination of the priority of its mortgage as against the various mechanics' liens.

Having been brought into court by Amortibanc, the Jehans filed their answer in which they admitted the execution of the first mortgage note on September 29, 1972. They specifically denied that the advances by Amortibanc were advanced to them. They alleged the funds were actually advanced to Clewal Construction, Inc. under the construction loan agreement between Amortibanc and Clewal dated October 29, 1972. The Jehans denied that they had defaulted under the terms and provisions of their note and mortgage or that Amortibanc was entitled to have its mortgage foreclosed. The defendants Jehan further alleged as a defense that Amortibanc was negligent in making advancements to Clewal Construction, Inc. without first determining and insuring that all subcontractors and materialmen were paid. Other defenses were set forth in the answer which are not material here.

Along with their answer the Jehans filed a cross-petition against the plaintiff for breach of a duty to protect the defendants in the advancement and payment of funds to Clewal Construction. In their cross-petition the Jehans alleged that they had been damaged in the amount of $35,000 because of the unpaid mechanics' liens and the increased cost to complete the residence on their real estate. The Jehans also filed a third-party complaint against Clewal Construction, Inc. alleging breach of Clewal's agreement to con-

struct a residence for the Jehans. In their third-party petition the Jehans prayed for judgment against Clewal Construction in an amount equal to any amount awarded by the court against the Jehans. Thereafter, Amortibanc as plaintiff filed its amended reply to the answer and cross-petition of defendants in which it alleged that the defendants had by their disbursement authorization expressly waived and released plaintiff Amortibanc from any obligation or duty to supervise and insure payment by the contractor of its obligation to materialmen furnishing labor or materials.

With the pleadings in this posture the case proceeded to trial. The evidence presented at the trial is extremely important because the testimony of the witnesses sheds light on the dealings of the various parties. The plaintiff called as its first witness Forrest Anderson, the secretary-treasurer of Amortibanc. His duties include the supervision and control of distribution of construction withdrawals in connection with mortgage loan transactions. He testified in regard to the procedure followed in making the six construction advances to Clewal Construction. He identified one check dated July 20, 1973, payable to Eureka Federal Savings and Loan Association in the amount of $450 which amount included a fee for extending the permanent loan date. Anderson testified that Eureka Federal Savings and Loan Association was eventually to be the permanent lender to the Jehans on the house. This evidence is important in that it shows that Amortibanc never intended to carry the permanent loan on the property for the Jehans. When asked as to the status of the loan he stated that no principal amount had been paid on the construction loan and that any interest paid had been paid by Clewal Construction, Inc. His testimony made it clear that Amortibanc and Clewal had executed many contracts for the construction of houses and there were quite a number of such construction loans outstanding. To his knowledge Dr. Jehan had never been provided with a breakdown of the advances made by Amortibanc to Clewal nor a copy of the periodical inspection report which Amortibanc had received from its inspector. The plaintiff Amortibanc rested its case having called as its sole witness Forrest Anderson.

The defendants Jehan called as their first witness Forrest Anderson who had just testified for the plaintiff. Anderson testified that as of the date of the trial 68 percent of the construction on the house had been completed. Certain funds were advanced which were to be paid by the contractor Clewal as part of its construction

costs. Anderson conceded that Amortibanc had not made any effort to see that the subcontractors were paid by Clewal. It is customary for Amortibanc to charge a one-percent service fee on any loan which it makes. Clewal paid a one-percent fee on the construction loan amounting to $378.50. When asked if a charge for a loan fee would have been made to Jehans at the time of closing and delivery of the house to the Jehans, the witness testified that *if the loan had been closed and completed,* the normal procedure would have been to charge the buyer one percent of the permanent loan which in this case was to be $45,000. The charge would have been made at the time of the closing of the loan. This testimony was important because it showed that moneys advanced to Clewal were advanced in accordance with its construction loan agreement. The construction loan to Clewal was obviously considered to be a distinct and separate loan since Clewal was charged one percent of the amount thereof or $378.50. The testimony of Anderson that the Jehans would have been charged a one-percent fee on the permanent loan *if* the loan had been closed is certainly evidence that Anderson considered that the permanent loan to the Jehans had not yet been closed and that it would not be closed until delivery of the completed house to the Jehans.

The defendants called as their next witness Dr. Sayed S. Jehan. He testified as to his conversation with the Amortibanc employees at the time he signed the mortgage note, mortgage, and disbursement authorization form. As pointed out above he testified that he and his wife understood that they would be responsible for the loan only when the house was completed. Jehan also testified that the construction work on the house by Clewal did not progress satisfactorily and on numerous occasions he called Mr. Trammell, an employee of Amortibanc, who said he would call Clewal Construction and see what could be done. At no time did the Amortibanc furnish any accounting to the Jehans of moneys advanced to Clewal. Finally Jehan testified that he and his wife selected Clewal Construction to be the builders of their home through Homefinders and that Amortibanc had nothing to do with their selection of Clewal. On redirect examination Dr. Jehan testified that he had obtained an estimate of the cost of completing the house in the amount of $32,000.

The final witness called on rebuttal by the plaintiff was Mary Kay Mai, assistant vice president of Amortibanc. She was present when the Jehans signed the loan documents and denied that she or anyone

else told the Jehans that they had no obligation on the note or mortgage until the house was completed. She identified a number of so-called lien affidavits signed by Walter Suter. There was a lien affidavit obtained at each of the six times advance payments were made to Clewal by Amortibanc. The trial court found that these lien affidavits were defective for a number of reasons: (1) An affidavit dated March 16, 1973, was not signed for Clewal by Walter H. Suter, whose name appeared thereon. (2) One affidavit was not signed by a notary. (3) Two of the affidavits were not dated. (4) The dates on all of the lien affidavits were filled in at a later date by someone other than the affiant Suter or notary public Mai. Mrs. Mai testified that the undated affidavits were obtained at the time of the last two advances made to Clewal Construction, Inc. She did not know of any instances in which lien affidavits were signed in blank as it is not their policy. She does not keep a notary public log. She did not fill in the address of the property which was covered by the affidavits. The addresses apparently were filled in later. Mary Kay Mai was the last witness to testify.

Following the completion of the trial the district court made extensive findings of fact and conclusions of law and entered judgment in favor of the defendants Jehan, denying plaintiff's petition for judgment on the Jehan note and foreclosure of the mortgage. The court further found that the six mechanics' liens asserted in the action were valid liens, and were coequal as to priority with each other. In addition the court granted judgment in favor of the defendants Jehan on their third-party petition against Clewal Construction, Inc. in the amount of $35,000. Costs in the action were assessed to the plaintiff and the defendant Clewal Construction, Inc. The plaintiff Amortibanc has appealed to this court contending that the trial court erred with respect to certain findings of fact and conclusions of law.

The trial court found that all advances made by the plaintiff Amortibanc to Clewal Construction, Inc. were made under the terms and conditions of the construction loan agreement between Amortibanc and Clewal dated October 29, 1972, and not to the defendants Jehan under the note and mortgage given by Jehans to Amortibanc dated September 29, 1972. The district court further made findings that the defendants Jehan were not in default on the mortgage executed by them to Amortibanc; that no obligation existed requiring the defendants Jehan to make such payment; that the obligation to make payments was the obligation of Clewal Con-

struction, Inc.; that the construction loan agreement between Clewal and Amortibanc dated October 29, 1972, placed the obligation for payment of construction advances on the builder Clewal; and that the Jehans did not have any obligation to pay the same until the house was completed and possession delivered. Based upon these findings of fact the trial court concluded that the petition of Amortibanc to foreclose Jehans' mortgage should be denied. The plaintiff maintains on this appeal that such findings of fact and conclusions of law were erroneous because the language of the various documents introduced into evidence established that the moneys to be disbursed by Amortibanc to Clewal for construction advances were to be paid from the proceeds of the Jehans' loan as evidenced by the note and mortgage. Specifically, Amortibanc relies upon the construction agreement entered between Jehans and Clewal Construction, Inc. dated February 25, 1972, which provided that the buyers Jehan were to pay ten percent on the purchase price of $47,600 and secure a ninety-percent conventional loan and further that the Jehans were to preclose a loan at Amortibanc "so that the builder can draw funds during construction." Amortibanc further relies upon the language contained in the disbursement authorization agreement executed September 29, 1972, along with the mortgage note and mortgage, and upon the language of the loan agreement between Amortibanc and Clewal which refers to the Amortibanc loan to the Jehans and provides that Amortibanc agrees to advance the proceeds of said loan to the builder as construction advances. It is Amortibanc's position that there is no language in any of these documents which would even suggest that the note and mortgage executed by the Jehans to Amortibanc would be effective only if the contractor successfully completed the construction of the dwelling. In view of these various written instruments Amortibanc contends that if they are all construed together and the language is given effect it necessarily follows that the money disbursed by Amortibanc for construction advances was paid from the proceeds of the Jehans' loan and disbursed in accordance with the disbursement authorization. Simply stated Amortibanc's position is that on default of the repayment obligation created by Jehans' note and mortgage, plaintiff Amortibanc was entitled to judgment on Jehans' note and foreclosure of the mortgage as a first and prior lien thereon.

It is the position of the Jehans on this appeal that the findings of the trial court and its conclusions of law are fully supported by

the evidence when all of the various instruments involving Amortibanc, Clewal, and the Jehans are considered together along with the oral testimony presented at the trial.

We have concluded that the findings of the trial court and its conclusions of law based thereon are supported by the evidence and by established principles of law. The problem presented to the trial court was to determine from all of the interwoven transactions involving Amortibanc, the Jehans, and Clewal what the parties intended with respect to their various rights and obligations. In arriving at its decision in this case the trial court obviously took into consideration a number of facts and circumstances which lead to a reasonable conclusion that Amortibanc was the financing agency of Clewal for construction of the house and that the obligation of the Jehans to pay Amortibanc for construction advances was conditioned on the proper completion of the construction contract by Clewal and the delivery of a completed house to the Jehans.

It is a well-settled principle of contract law that where two or more instruments are executed by the same parties at or near the same time in the course of the same transaction and concern the same subject matter, they will be read and construed together. (*Topeka Savings Association v. Beck,* 199 Kan. 272, 428 P. 2d 779; *Atlas Industries, Inc. v. National Cash Register Co.,* 216 Kan. 213, 531 P. 2d 41.) Furthermore if a written agreement is ambiguous, the facts and circumstances existing prior to and contemporaneously with its execution are relevant to clarify the intent and purpose of the contract in that regard. (*Cline v. Angle,* 216 Kan. 328, 532 P. 2d 1093.) Stated in another way where ambiguity or uncertainty is involved, the intention is not ascertained by resort to literal interpretation, but by considering all language employed, the circumstances existing when the agreement was made, the object sought to be attained, and other circumstances, if any, which tend to clarify the real intention of the parties. These rules have been applied in interpreting mortgages and in other loan transactions. (*Federal Land Bank v. Girtch,* 151 Kan. 528, 99 P. 2d 768.)

When the evidence presented at the trial in this case is carefully analyzed it clearly appears that the various contracts and the note and mortgage involved were ambiguous and that oral testimony of the parties was properly considered to determine the true intent and purpose of the parties. We note specifically the following evidentiary matters contained in the record:

(1) The Jehans were interested in arranging for the construction of a new home. On February 25, 1972, Clewal and the Jehans signed an instrument which was designated as a real estate purchase contract under the terms of which Clewal agreed to construct a new home for the Jehans for the sum of $47,600. By the terms of this contract the Jehans agreed to "preclose a loan" at Amortibanc Investment Company so "builder can draw funds during said construction." The builder agreed to pay interest on these funds at final closing. It should be noted that Amortibanc came into the picture at the insistence of Clewal and that the Jehans were not to "close a loan" but to "preclose a loan." The use of the word "preclose" is not clear and raises some question as to what the parties intended by the use of that word.

(2) On September 29, 1972, according to Dr. Jehan when the Jehans went to the office of Amortibanc and executed the note, mortgage and disbursement authorization letter, they were advised by Amortibanc employees that the Jehans would be obligated on the note and mortgage only upon completion of the house. Although this testimony was denied by the employees of Amortibanc it was for the trial court to judge the credibility of the witnesses. It is undisputed that Amortibanc prepared all documents for the Jehans to sign. It is significant that installment payments of principal and interest under the note were to commence on April 1, 1973, which was after the completion date for the building, March 29, 1973. This provision would tend to show the intention of Amortibanc that the Jehans were to commence payments of principal and interest after the house had been completed and possession delivered to the Jehans.

(3) On October 29, 1972, Amortibanc and Clewal entered into a separate construction loan agreement. This agreement refers specifically to the "real estate purchase contract" wherein Clewal had agreed to construct and sell to the Jehans a residence. Clewal under this construction agreement agreed to pay all interest on construction advances until March 29, 1973, or until the house was completed and possession delivered to the buyer. In the event the builder failed to complete the construction of the house by March 29, 1973, Clewal agreed to make *all* principal payments due on the $45,000 mortgage previously executed by the Jehans. There are other provisions in this contract between Clewal and Amortibanc which are significant. The construction advances to be made by Amortibanc to Clewal in the total amount of $37,850 are designated

as the "construction loan amount." The $45,000 figure contained in the Jehans' note and mortgage is designated as the "permanent loan amount." Furthermore Clewal agreed to pay to Amortibanc a *commitment fee* of $378.50 (one percent of the construction loan amount) and all other costs and expenses in setting up the loan. It could be concluded from this instrument that Amortibanc intended that there be two separate and distinct loans: a construction loan to Clewal in the amount of $37,850 and a permanent loan in the amount of $45,000 on which the obligations for interest and principal were not to be paid until possession of a completed house was delivered to the Jehans. This language is strong evidence of the intent of Amortibanc that Clewal be obligated for construction advances up to the time the house was completed and that the obligation of the Jehans to make payments was conditional on the completion of the house.

(4) During the course of the construction of the house, Amortibanc made six advance payments to Clewal. According to the testimony of Amortibanc's secretary-treasurer, Forrest Anderson, these advance payments were made on checks payable to Clewal only in accordance with the construction loan agreement with Clewal. Amortibanc never at any time notified the Jehans as to the date or amount of any such disbursements. This is clearly evidence that Amortibanc was looking to Clewal for repayment of the construction loan until such time as the house was completed and possession delivered to the Jehans.

(5) The testimony of Forrest Anderson was also important in that it showed that Amortibanc never intended to carry a permanent loan on the property for the Jehans. Eureka Federal Savings and Loan was to be the permanent lender to the Jehans. Anderson testified that it is customary for Amortibanc to charge a one-percent service fee on any loan that it makes. Clewal paid one-percent fee on its construction loan to Amortibanc. When asked if a one-percent fee would be charged to the Jehans at the completion of the house and at the close of the loan, the witness testified that *"if the loan had been closed and completed,"* the Jehans would have been charged one percent of the permanent loan which in this case was to be $45,000. This testimony is positive evidence that Anderson considered that the permanent loan to the Jehans had not yet been closed and that it would not be closed until the completed house had been delivered to the Jehans.

(6) In the October 29 construction loan agreement between

Amortibanc and Clewal, Clewal as builder agreed to provide Amortibanc with an original builder's risk policy prior to the date of the first draw. This provision would logically lead to the conclusion that Amortibanc was in the position of something more than a mere lender of funds for completion of the Jehan house. A mere lender would not ordinarily be concerned with requiring the contractor to provide an insurance policy to protect it from liability while construction was in progress. This requirement of insurance would indicate that Amortibanc was an active participant in Clewal construction jobs and not merely a financing agency which lent money to the Jehans, as the purchasers of a home.

(7) The evidence was undisputed that Clewal Construction had had numerous construction jobs financed by Amortibanc. Amortibanc got involved in the transaction as a result of the insistence of Clewal. We note that some of the checks for advance payments from Amortibanc to Clewal included construction advances for several jobs including the Jehan contract. This commingling of construction funds on several projects is certainly evidence to show that Amortibanc was the financial backer of Clewal and its construction projects rather than a mere lender of money to Dr. and Mrs. Jehan.

In reviewing an evidentiary record to determine whether the findings of the trial court are supported by the evidence, this court is concerned only with evidence which supports the trial court's findings, not with evidence which might have supported contrary findings. (*Landrum v. Taylor,* 217 Kan. 113, 535 P. 2d 406; *Parsons Mobile Products, Inc. v. Remmert,* 216 Kan. 256, 531 P. 2d 428.) Here there was evidence to support the findings of the trial court that the delivery of the note and mortgage by the Jehans to Amortibanc was conditional, that is, to take effect only upon the happening of a future event—the completion of the construction work on the house and the delivery of the same to the Jehans by Clewal Construction. The complaint of Amortibanc that parol evidence was admitted to show that the obligation under the note and mortgage was conditional is not well taken. The rule is well recognized in this state that as between the original parties to a negotiable instrument parol evidence is admissible to show that the delivery of the instrument to the payee was conditional, that is, to take effect only upon the happening of some future event. (*Greenleaf State Bank v. Monteith,* 173 Kan. 799, 252 P. 2d 621; *Miller v. Buss,* 103 Kan. 338, 173 Pac. 975.) Since there is evidence to support the findings of the trial court that the obligation of the Jehans on their note and

mortgage to Amortibanc was conditioned on the completion of the house and delivery of possession to the Jehans, it follows as a matter of law that the Jehans had not defaulted on their mortgage obligations. Hence, the trial court correctly held that Amortibanc was not entitled to judgment on the note or to a foreclosure of the mortgage. Since Amortibanc's rights were conditional upon the proper performance of the construction contract by Clewal, Amortibanc could have protected itself by taking over the construction project and completing the work in accordance with contractual requirements and by delivering possession of a completed house to the Jehans. At that point the condition having been fulfilled the Jehans would have been obligated on their note and mortgage to Amortibanc.

The determination of the first point raised disposes of the appeal. It was not necessary for the trial court to find that the mortgage, note and disbursement authorization were unconscionable and unenforceable. Nor do the findings of the trial court that Amortibanc failed to use reasonable care and was negligent in the making of advance construction payments to Clewal have any significance in the case. The district court simply denied judgment to Amortibanc on the Jehans' note and mortgage for the reason that the condition of the note and mortgage not having occurred, the Jehans were not yet obligated to pay the note and mortgage and hence there was no default. The trial court did not enter judgment in favor of the Jehans against the plaintiff Amortibanc for damages resulting from negligence in the disbursement of construction funds. The trial court, in effect, left the parties in the position where the Jehans had no obligation to pay the note and mortgage to Amortibanc until a completed house was delivered to them pursuant to the contract. In view of our disposition of the case the remaining issues raised on this appeal need not be determined.

For the reasons set forth above the judgment of the district court is affirmed.