SMITH, Circuit Judge,
dissenting.
I respectfully dissent. In my review of this case, I believe the majority somewhat misses the mark by focusing on disputes of fact regarding Homoly’s consent to be per *1040 sonally bound. The contract language requires focus on an antecedent inquiry: whether the loan(s) themselves are enforceable debts. If Robl Construction violated the operating agreement by improperly loaning the Company money without meeting the requisite conditions precedent, then neither the Company nor Homoly would be liable for their respective debts under the invalid loan.
I.
The majority not only liberally construes Robl Construction’s arguments but raises arguments that Robl Construction did not. When Homoly moved for summary judgment, he argued five points: (1) the operating agreement did not provide for a direct cause of action for failing to meet a capital contribution; (2) the necessary preconditions to trigger liability under a capital contribution were not met; (3) the necessary preconditions to trigger a personal guarantee under § 8 of the buy-sell agreement were not met; (4) the loan was invalid because Robl Construction violated § 6.03(D) of the operating agreement; and (5) any alleged oral agreement of Homoly to be personally bound did not satisfy the statute of frauds. In its opposition, Robl Construction only addressed issues (1), (2), (3), and (5). Robl Construction sidestepped issue (4) with a general denial by asserting that “Robl Construction’s loan and Homoly’s personal guarantee and authorization do not violate the Operating Agreement or the Buy-Sell Agreement.” Elsewhere, Robl Construction stated in passing that Homoly “requested” the loan. Although this argument was not clearly outlined, Robl Construction was presumably arguing that such a request constituted the necessary “prior consent of a Super-Majority-in-Interest” to fulfill § 6.03(D).
After resolving issues (1) and (2) by finding the advanced monies should be considered as a loan rather than a failed capital contribution, the district court granted summary judgment in favor of Homoly based on issue (3). The district court stated that “there is nothing in the record showing that Robl [Construction] requested Homoly personally guarantee any such loan as the Buy-Sell Agreement clearly contemplates.” The court concluded that Robl Construction was only “reifying] on one email exchange between Vera Robl and Homoly” and found that, at best, the email exchange “may show that Homoly wanted Robl [Construction] to loan the Company money, but it does not indicate that Robl requested for Homoly to personally guarantee the loan.” As the majority has indicated above, Robl Construction did not merely rely upon the 2006 email string, but also pointed to other pieces of evidence that raised a genuine dispute of material fact on whether Homoly agreed to personally guarantee the loan orally and in writing. Nevertheless, we need not adopt the district court’s reasoning to affirm its grant of summary judgment.[4]
Robl Construction’s argument avoids issue (4), that is, whether Robl Construction violated the operating agreement by advancing the Company monies without the “prior consent of a Super-Majority-in-Interest” under § 6.03(D). Further, § 6.03(1) requires either the prior consent *1041 of a Super-Majority-in-Interest to impose personal liability on any Member “for any debt or obligation of the Company,” or the “written consent” of that Member to be personally bound. Robl Construction essentially ignores these contractual provisions.
Homoly argues on appeal that he is entitled to judgment as a matter of law because Robl Construction broke the very rules that governed the operation of the Company. His points are well taken. As stated above, Robl Construction has not advanced an argument as to Homoly’s authorization of the loan, but it has submitted evidence on his personal guarantee. Thus, my disagreement with the majority rests in Robl Construction’s waiver of arguing that it fulfilled § 6.08(D) and (I) of the operating agreement by loaning money to the Company with Homoly’s prior consent.
In Kansas, “[t]he general rule is that the extinguishment, release or discharge of the principal’s contract relieves the guarantor of his or her obligation to pay.” Hill Petroleum Co. v. Pathmark Int’l, Inc., 759 F.Supp. 722, 725 (D.Kan.1991) (citing Iola State Bank v. Biggs, 233 Kan. 450, 662 P.2d 563, 570 (1983)). “The guaranty is an obligation collateral to another contractual duty to perform.... It is in the nature of a warranty by the guarantor that the thing guaranteed to be accomplished by the principal shall be done, and is not an engagement jointly with the principal to do the act.” Biggs, 662 P.2d at 567 (citing Trego WaKeeney State Bank v. Maier, 214 Kan. 169, 519 P.2d 743 (1974)). “As the extent of the liability of the principal debt- or generally measures and limits the liability of the guarantor, and a guaranty is dependent on the existence of a principal obligation, if the principal contract is invalid for reasons inherent in itself, the guaranty generally is also invalid.” 38A C.J.S. Guaranty § 15 (footnotes omitted); see also 38 Am.Jur.2d Guaranty § 51 (1968) (“The guaranty promise is a promise to answer for the debt or the default of the principal debtor under his contract with the creditor. Therefore, unless the debtor is bound under the principal contract, there is no obligation which is guaranteed and the guarantor is not liable to the creditor if the debtor fails to perform.”), quoted in Precision Sawing, Inc. v. Cane Creek Concrete Servs., Inc., No. 5:13CV00054 JLH, 2014 WL 1154125, at *3 (E.D.Ark., Mar. 20, 2014).
Whether Homoly personally guaranteed the loan only'becomes a material question of fact for a jury after the loan’s validity has been established. The former is built on the latter; if Robl Construction’s loan to the Company is unenforceable because Robl Construction violated the Company’s own operating agreement, then Homoly would not have a duty to personally repay the invalid loan amount. Thus, Homoly’s personal guarantee would be of no effect and there would be no enforceable contract for Homoly to breach.[5]
Robl Construction did not show Homoly actually authorized the loan as is required by § 6.03(D) and (I) of the operating agreement. Addressing subsection (D), Robl Construction does not argue that Ho-moly gave his prior consent to the over *1042 $10,000 loan before the Company assumed the debt.[6] When a contract is unambiguous, “[t]he interpretation and legal effect of a contract is a question of law for the court to decide, not a jury.” Wolfe Elec., Inc. v. Duckworth, 293 Kan. 375, 266 P.3d 516, 534 (2011) (citing Osterhaus v. Toth, 291 Kan. 759, 249 P.3d 888, 896 (2011)). Section 6.03(D) prohibits the creation of an obligation of the Company, which includes taking on a debt of over $10,000. Robl Construction contends Homoly agreed to personally guarantee the loan but ignores the antecedent inquiry of whether he authorized the loan in the first place. Logically, these are distinct legal questions. Whether Homoly agreed to personally guarantee the loan only becomes a material fact dispute if the debt itself is legally enforceable. As a result, I would affirm the district court’s grant of summary judgment on the basis that Robl Construction has failed to show a genuine dispute of material fact that Homoly gave his prior consent to the loan, and due to Robl Construction’s violation of § 6.03(D), Homoly is entitled to judgment as a matter of law.
Second, § 6.03(1) requires the “prior consent of a Super-Majority-in-Interest” when the Company takes “[a]ny act which would cause a Member, absent such Member’s written consent, to become personally liable for any debt or obligation of the Company.” Homoly asserts that he never gave such written consent. Robl Construction does not dispute that but argues that § 8 of the buy-sell agreement acts as Homoly’s written consent. Both Robl Construction and the majority note that in cases of inconsistencies between the operating agreement and the buy-sell agreement, the latter controls. According to Kansas law, however, we must consider the two agreements together. See First Nat’l Bank of Hutchinson v. Kaiser, 222 Kan. 274, 564 P.2d 493, 496 (1977) (“Where two instruments are executed by the same parties at or near the same time in the course of the same transaction, and concerning the same subject matter, they will be read and construed together.” (citing Amortibanc Inv. Co. v. Jehan, 220 Kan. 33, 551 P.2d 918 (1976); Place v. Place, 207 Kan. 734, 486 P.2d 1354 (1971); Skinner v. Skinner, 126 Kan. 601, 270 P. 594 (1928))). It is undisputed that the buy-sell agreement and the operating agreement were both executed on the same day by the same parties and concern the same subject matter of the governing rules of the Company. Therefore, the two documents should be construed together.
Taking this into account, Robl Construction’s interpretation of § 8 is contrary to Kansas law. Robl Construction argues that § 8 of the buy-sell agreement is in fact the very written consent required by § 6.03(1). This interpretation effectively reads § 6.03(1) out of the operating agreement. Why require the prior written consent of a member to be personally liable for Company debts in § 6.03(1) if such a section is unnecessary because § 8 of the buy-sell agreement acts as such prior written consent? Such an interpretation *1043 would lead to the absurd result of reading language out of the operating agreement in violation of Kansas contract interpretation principles. See Garvey Ctr., Inc. v. Food Specialties, Inc., 214 Kan. 224, 519 P.2d 646, 649-50 (1974) (“Results which vitiate the purpose or reduce the terms of the contract to an absurdity should be avoided. The meaning of a contract should always be ascertained by a consideration of all the pertinent provisions and never be determined by critical analysis of a single or isolated provision.” (quotation and citation omitted)); Johnson Cnty. Bank v. Ross, 28 Kan.App.2d 8, 13 P.3d 351, 353 (2000) (“The law favors reasonable interpretations [of contracts], and results which vitiate the purpose of the terms of the agreement to an absurdity should be avoided.” (citing City of Manhattan v. Galbraith, 24 Kan.App.2d 327, 945 P.2d 10, 14 (1997))).
The more reasonable interpretation that harmonizes the two contract provisions understands that § 6.03(1) requires a written consent from a Member to be personally bound for any debt of the Company, but § 8 highlights a subset of these types of debts in which a lender would want added security of the Company’s debt in the form of a member’s personal guaranty. Presumably, a written personal guaranty under § 8 would also fulfill the requirements of § 6.03(I).[7] Section 8 is not meant to fulfill § 6.03(1) and consequently write it out of the operating agreement; rather, § 8 is meant to provide a separate mechanism for the Company to acquire loans when the lender requires additional security to guarantee the loans.
Therefore, I would hold that Robl Construction has failed to present specific facts to show a triable issue for a jury as to whether § 6.03(1) was fulfilled. Further, as a matter of law, § 8 should not be interpreted as fulfilling § 6.03(1). Accordingly, I would affirm the district court’s grant of summary judgment on this basis.

. Even if the district court erred, this court is not constrained by the district court’s rationale. It is well settled that "this court may affirm for any reason supported in the record, even if that reason is different from the rationale of the district court.” Wierman v. Casey’s Gen. Stores, 638 F.3d 984, 1002 (8th Cir.2011) (citation omitted). Further, "[t]his court may affirm the district court even if it committed legal error in reaching the correct result.” Id. (citations omitted).

. A breach-of-contract claim for a personal guarantee fails when the loan to be personally guaranteed is not valid. It fails because most jurisdictions (including Kansas) require a valid contract to exist as a necessary element of the claim. See Stechschulte v. Jennings, 297 Kan. 2, 298 P.3d 1083, 1098 (2013) (citing Commercial Credit Corp. v. Harris, 212 Kan. 310, 510 P.2d 1322, 1325 (1973)). If the personal guarantee is invalidated because the principal loan contract is invalid, an enforceable contract does not exist between the guarantor and the lender.

. The only place in which Robl Construction even hints to argue that it fulfilled § 6.03(D) is in § II.A of its Appellant's Brief, entitled "The monies Robl Construction loaned to the Company were loans Homoly consented to, not capital contributions." (Emphasis added.) If Homoly indeed consented to the loan, this would fulfill the required prior consent of a Super-Majority-in-Interest because both he and Robl Construction consented to the Company taking on this debt. Upon closer examination, however, it is apparent that § II.A addresses the district court’s finding that the money advanced by Robl Construction was a loan and not a failed capital contribution. Thus, Robl Construction does not argue that Homoly gave his prior consent to the loan itself. Instead, it argues that Homoly considered treating the monies as a loan rather than capital contributions.

. The record offers an example of such a transaction. Both Homoly and Robl Construction signed personal guarantees for loans to the Company from the lender North American Savings Bank, F.S.B. This example is not meant to prove the intent of the parties. Instead, it shows how a written personal guaranty can satisfy both § 8 and § 6.03(1).