**A.S. NEWELL, et al.,
Plaintiffs-Appellants,**

v.

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, et al., Defendants-Appellees.**

No. 85–4003.

United States Court of Appeals, Fifth Circuit.

May 19, 1986.

---

20. *Id.*

F. Gerald Maples, Pascagoula, Miss., for plaintiffs-appellants.

Elihu I. Leifer, Washington, D.C., Dixon L. Pyles, Jackson, Miss., for defendants-appellees.

Before GEE, RUBIN and DAVIS, Circuit Judges.

## OPINION

W. EUGENE DAVIS, Circuit Judge:

Appellants are fourteen electrical workers who are members of Local Union 733, an affiliate of the International Brotherhood of Electrical Workers (International), located in Pascagoula, Mississippi. In December 1975 and February 1976, IBEW Local 1317 in Laurel, Mississippi permitted appellants to transfer their membership to Local 1317 and to upgrade their classifications to journeymen wiremen.

The International rescinded both the transfers and classification changes on grounds that the action of the Laurel local violated the International constitution and Local 1317's by-laws. Appellants brought this suit under the Labor Management Reporting Disclosure Act (LMRDA), 29 U.S.C. § 401 et seq., and state contract law seeking damages and an order reinstating their memberships in the Laurel local and upgraded classifications. Following a bench trial, the district court held that the International's actions did not violate the LMRDA or state contract law. We find no error and affirm.

I.

The Laurel, Mississippi Local 1317 is a relatively small local with approximately one hundred members. At the time appellants sought admission, a large number of Local 1317 members were unemployed because of a work shortage in the local's five-county jurisdiction. The local's treasury was badly depleted. Between August 1975 and February 1976, Local 1317 admitted fifty-seven transfer applicants—known as "travelers"—including appellants. Travelers from local unions in California, Texas, Ohio, Pennsylvania, South Carolina, Michigan, Tennessee, Florida and Canada,

as well as appellants from Pascagoula, were admitted to Local 1317 and their classifications were upgraded to journeymen wiremen.

Appellants followed the procedure provided by Article XXV of the International's constitution for transferring membership and upgrading classification. They obtained a travel card from their home local in Pascagoula and deposited it with the business manager of the Laurel local. A vote was taken at a meeting of the Laurel membership and appellants were voted into the Laurel local and had their classifications upgraded. No investigation of the appellants' qualifications to work in the journeyman wireman classification was undertaken. The Laurel local benefited from this procedure by collecting initiation fees and dues from the new members.

The fifty-seven travelers who were admitted to the Laurel local immediately obtained travel cards from that local and went elsewhere in the country with their newly upgraded classifications to obtain employment. Other locals granted working cards to these travelers and referred them to contractors hiring electrical workers.

In February 1976, the International began receiving complaints from locals around the country concerning Laurel travelers who had been able to upgrade their classifications simply by joining the Laurel

local. The International determined that the Laurel local's actions—termed "ticket selling"—were in violation of the union's constitution and Local 1317's by-laws.

Following the International's invalidation of their Laurel local memberships and upgraded classifications, appellants brought this suit contending that the International's actions violated: (1) rights secured to appellants as members of the Laurel local under section 101(a)(1) of the LMRDA;[1] (2) procedural rights under section 101(a)(5) of the LMRDA,[2] and (3) state contract law.

## II.

### A.

Appellants argue that they became legitimate members of Local 1317 by fulfilling the requirements of Article XXV of the union constitution governing transfer of membership through the use of traveling cards[3] and the International exceeded its authority in rescinding their memberships.

The dispute on this issue narrows to whether the International correctly ruled that the residency requirement of Article XXII of the union constitution applies to travelers. The relevant portion of Article XXII provides: "ADMISSION OF MEMBERS: No L.U. [Local Union] can admit an applicant who does not reside in, or who is not employed at the trade, in the jurisdiction of the L.U., unless the L.U. is directed

1. Equal Rights—Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations and such organization's constitution and bylaws. 29 U.S.C. § 411(a)(1).

2. Safeguards Against Improper Disciplinary Action—No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing. 29 U.S.C. § 411(a)(5).

3. Article XXV of the union constitution provides in part:

   TRAVELING CARDS

   \*    \*    \*    \*    \*    \*

   Any member desiring to transfer his membership, may apply to the F.S. for a traveling card for a stated time not to exceed three (3) months. This card shall be null and void unless deposited in some L.U. or renewed by the L.U. granting it on or before the date of its expiration.

   \*    \*    \*    \*    \*    \*

   Traveling cards may not be deposited in any L.U. which does not include the type of membership for which the card was issued, unless the member transferred to a type of membership covered by the L.U. ... Each L.U. shall have full autonomy to accept or reject all requests for transfers.

   \*    \*    \*    \*    \*    \*

to admit him by the [International President]." Appellants contend that the above provision of Article XXII of the IBEW constitution, which the International relied on to rescind their memberships in Local 1317, applies only to first time union applicants and not to applicants traveling from another local. In support of this contention appellants rely principally on *Parish v. Legion*, 450 F.2d 821 (9th Cir.1971). The court in *Parish* considered whether an IBEW local union had the discretion to decline membership to a traveler who met all objective criteria for admission to the local. The local argued that the section of Article XXII that requires a vote of the membership to admit new members applied to all applicants for membership, including travelers. The court disagreed and held that this provision applied only to new applicants who had never held union membership and that it did not apply to travelers. The court rejected the local's interpretation of Article XXII as inconsistent with section 14 of Article XXV providing that locals with a ten percent unemployment rate "shall not be required to accept traveling cards."

Appellants interpret *Parish* as holding that all of Article XXII applies to new members only. We do not read *Parish* so broadly. The court held that one of the twelve sections of Article XXII did not apply to travelers; it did not hold that the residency requirement of that article did not apply to travelers.

Appellants also contend that the explicit language of Article XXII supports its position that this entire article, including its residency requirement, applies only to first time members of the IBEW and not to travelers. We disagree. The title of Article XXII is "Admission of Members." Some of the provisions of Article XXII, such as the oath taking provision, obviously apply only to new members and not travelers. But this is not true of all sections of the Article. For example, Section 1 of Article XXII provides that no local "can admit any applicant ... indebted to any [local union.]" This clause of Article XXII apparently applies to a traveling member of another local who is indebted to his home local. We are not persuaded from the explicit language of Article XXII that all of its provisions are applicable only to first time applicants of the union. Relatedly, Article XXV does not, on its face, purport to preclude other articles of the constitution from applying to travelers.

■ In determining whether the residency requirements of Article XXII apply to travelers such as appellants, we must give deference to the union's interpretation of its own constitution. Courts should strive to avoid interference with internal union affairs. *See Wirtz v. Glass Bottle Blowers Association*, 389 U.S. 463, 470–71, 88 S.Ct. 643, 647–48, 19 L.Ed.2d 705 (1968); *Calhoon v. Harvey*, 379 U.S. 134, 140, 85 S.Ct. 292, 296, 13 L.Ed.2d 190 (1964). We will not invalidate the International's interpretation of its own constitution unless it is "patently unreasonable." *Stelling v. IBEW*, 587 F.2d 1379, 1389 (9th Cir.1978), cert. denied, 442 U.S. 944, 99 S.Ct. 2890, 61 L.Ed.2d 315 (1979); *Local Union No. 657 of the United Brotherhood of Carpenters and Joiners v. Sidell*, 552 F.2d 1250, 1257 (7th Cir.), cert. denied, 434 U.S. 862, 98 S.Ct. 190, 54 L.Ed.2d 135 (1977); *see also Vestal v. Hoffa*, 451 F.2d 706, 709 (6th Cir.1971), cert. denied, 406 U.S. 934, 92 S.Ct. 1768, 32 L.Ed.2d 135 (1972).

As early as 1965, the IBEW's policy guidebook reflected the interpretation of Articles XXII and XXV which the International argues for today. A statement consistent with this interpretation was included in succeeding editions of the guidebook, and the edition in effect when appellants were voted to membership in the Laurel local provided:

> The ability of IBEW members to travel from one Local Union to another in search of work, and to transfer membership, is a solid benefit of our Brotherhood. No Local Union can admit an applicant who does not reside in, or is not employed at the trade in, the jurisdiction of the local, unless the Local Union is

directed to admit him by the International President.

We find it highly unlikely that the International, in drafting the constitution, intended to permit a local to accept any traveler for membership and upgrade his classification without regard to where the member intended to reside and work. The potential for abuse inherent in such a scheme is apparent; it would encourage a local to admit workers with no ties to its geographic area simply as a way to increase dues and raise money. If the local's only connection with travelers it admits to membership is the collection of fees and dues, the local has little incentive to evalute their qualifications to advance to a higher work classification. One local would then be unable to depend on other locals to admit and reclassify only qualified workers. It is reasonable to assume that the International intended to draft a constitution that gave incentive to its locals to admit and maintain qualified workers on its rolls. Restricting the local's members to persons residing or working within the local's jurisdiction tends to provide such incentive: If the local must respond to complaints about the shortcomings of its own members this will motivate the local to give employers in its jurisdiction skilled, qualified workers. In sum, we agree with the district court that International was not unreasonable in determining that the residency requirements of Article XXII of the constitution apply to appellants.

### B.

Appellants also argue in passing that the International failed to follow the procedural requirements of section 101(a)(5) of the LMRDA, 29 U.S.C. § 411(a)(5). Section 101(a)(5) requires that a member be given a fair hearing before being "fined, suspended, expelled, or otherwise disciplined." Appellants' memberships in the Laurel local were rescinded in February 1976. A hearing was not held on the propriety of International's action until September 23, 1976, when, it is conceded, appellants received a full, fair hearing. Appellants argue that rights secured to them under § 101(a)(5) were violated because they were not given a hearing *before* their memberships were rescinded.

Appellants do not suggest any reason an impartial hearing officer would have decided in a pre-termination hearing that they were entitled to membership in the Laurel local without living or working in that local's geographic area. As stated above, we agree with the district court that this issue was correctly decided in the September hearing. Consequently, the absence of a pre-deprivation hearing did not deprive appellants of any substantive rights under LMRDA. The failure of appellants to show prejudice from the lack of a pre-deprivation hearing precludes appellants from recovering damages, such as loss of wages or loss of seniority rights flowing directly from the termination of their union memberships. *Carey v. Piphus*, 435 U.S. 247, 260, 98 S.Ct. 1042, 1050, 55 L.Ed.2d 252 (1978); *Feltington v. Moving Picture Machine Operators Union Local 306*, 605 F.2d 1251, 1258 (2d Cir.1979), *cert. denied*, 446 U.S. 943, 100 S.Ct. 2169, 64 L.Ed.2d 799 (1980).

Even where the deprivation is justified, damages have been allowed for emotional distress flowing directly from the deprivation of the procedural right of a pre-termination hearing. *Carey*, 435 U.S. at 260–64, 98 S.Ct. at 1052; *Feltington*, 605 F.2d at 1258. The record evidence in this case, however, is lacking in proof that would tend to substantiate items of damage falling in this latter category and consequently no recovery for this item of damage is warranted. *See Carey*, 435 U.S. at 262, 98 S.Ct. at 1051.

### C.

Appellants' final contention is that they have a common law contractual right under the union constitution to membership in the Laurel local, and that the International's invalidation of their transfers and journeymen wiremen classification is a breach of that contract. The union consti-

tution constitutes a contract between the International and its membership. *Parish*, 450 F.2d at 826. Under this contract as we have interpreted it, appellants had no membership rights in the Laurel local. It follows that their common law contract claim must fail.

AFFIRMED.