BUTLER MANUFACTURING COMPANY, INC., et al., Plaintiffs,

v.

AMERICOLD CORPORATION, et al., Defendants.

No. 92–2118–JWL.

United States District Court, D. Kansas.

Dec. 10, 1993.

Thomas R. Buchanan, Mark D. Hinderks, Roger D. Stanton, Stinson, Mag & Fizzell, Overland Park, KS, David S. Evinger, Andrew W. Horstman, Martin R. Lueck, Robins, Kaplan, Miller & Ciresi, Minneapolis, MN, Michael G. Norris, Payne & Jones, Chtd., Overland Park, KS, for plaintiffs.

Paul H. Niewald, Niewald, Waldeck & Brown, Kansas City, MO, Douglas R. Richmond, Robert G. Rooney, Armstrong, Teasdale, Schlafly & Davis, James S. Kreamer, Baker, Sterchi & Cowden, Kansas City, MO, Mary M. Kenney, William H. Sanders, Floyd R. Finch, Jr, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, MO, James M. Yeretsky, Patrick J. Doran, Niewald, Waldeck & Brown, Overland Park, KS, for defendants.

### *MEMORANDUM AND ORDER*

LUNGSTRUM, District Judge.

### I. *Introduction*

This consolidated action arises out of a fire that occurred at an underground warehouse facility owned and operated by defendants

Americold Corporation and Americold Services Corporation ("defendants"). The plaintiffs in the various consolidated cases consist of corporations who had stored foodstuffs, records and other goods which were damaged in the fire and various insurers of those goods. The various goods stored in the warehouse facility fall into several general categories, including those covered by what are denominated as record storage contracts, those covered by warehouse receipts, and those covered by what are termed leasehold contracts.

This matter is currently before the court on defendants' motions for summary judgment, or in the alternative, for partial summary judgment, against cross-claim plaintiff Safeway (Doc. #25 in case no. 92–2458–JWL; Doc. #24 in case no. 93–2024–JWL; and Doc. #12 in case no. 93–2067–JWL). The motions filed by defendants in the three cases are identical. The motions deal with issues relating to the applicability of an exculpatory clause and limitation on damages language that is contained in the leasehold contracts executed by defendants and Safeway. The motions also seek summary judgment on a variety of liability related arguments.

Following a thorough examination of the arguments and authorities submitted by the parties and a review of the relevant case law, the court finds that defendants' motions for summary judgment or, in the alternative, for partial summary judgment should be granted in part and denied in part. As more fully set forth below, the court finds that the motions are granted as to the enforceability of the exculpatory provisions contained in the leasehold contracts. The liability arguments are denied as premature, without prejudice to their re-assertion in a subsequent motion.

## II. Factual Background

In the various consolidated cases, plaintiffs have sued defendants for alleged destruction and damage to property stored in defendants' underground warehouse located at 6500 Inland Drive, Kansas City, Kansas. The warehouse in question is located in a limestone cave which was originally formed during mining operations. Plaintiffs' claims arise from a fire which broke out at the warehouse on December 28, 1991. Plaintiffs have filed various claims in the consolidated cases which seek relief for property damage, extra expenses and costs, lost profits and attorneys' fees.

The vast majority of goods stored in the warehouse by plaintiffs fall into two general categories, those covered by what are denominated as record storage contracts and those covered by warehouse receipts. The respective record storage contracts and warehouse receipts each contained identical damage limitation provisions. The court has previously issued orders ruling on the applicability of the damage limitation provisions in those documents.[1]

In the present motions by defendants for summary judgment against cross-claim plaintiff Safeway, the court is faced with a different issue. The relationship between Safeway and defendants is not governed by the record storage contracts or warehouse receipts common to the other plaintiffs in the case. Rather, Safeway and defendants entered into lease agreements (hereinafter referred to as the "leasehold contracts") whereby Safeway leased space in the defendants' warehouse. The present order deals with the applicability of exculpatory provisions contained in the leasehold contracts.

## III. Summary Judgment Standards

A motion for summary judgment gives a judge an initial opportunity to assess the need for a trial without weighing the evidence or determining credibility. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The

---

1. A Memorandum and Order ruling on the applicability of the damage limitation provisions contained in the record storage contracts was issued by the court on September 9, 1993. A Memorandum and Order ruling on the applicability of the damage limitation provisions contained in the warehouse receipts was issued by the court on September 20, 1993.

requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2511–12.

▇▇▇▇ The party who files a motion for summary judgment has the initial burden of demonstrating the absence of a genuine issue of material facts concerning its claims. This burden may be met by showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. The nonmoving party may not simply rest on its pleadings in the case but has the affirmative duty to come forward with facts to establish that a genuine issue exists necessitating a trial in the case. *Id.* Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2555.

## IV. Discussion

The central question facing the court in defendants' motions for summary judgment is what legal effect should be given to the exculpatory language contained in the leasehold contracts. Paragraph 16 of the leasehold contracts, which contemplates the mutu-al release of liability between the lessor and lessee to the extent that either party is insured for the loss, provides as follows:

16. SUBROGATION: As part of the consideration for this lease, each of the parties hereto does hereby release the other party hereto from all liability for damage due to any act or neglect of the other party (except as hereinafter provided) occasioned to property owned by said parties which is or might be incident to or the result of a fire or any other casualty against loss for which either of the parties is now carrying or hereafter may carry insurance; provided, however, that the releases herein contained shall not apply to any loss or damage occasioned by the willful, wanton, or premeditated negligence of either of the parties hereto, and the parties hereto further covenant that any insurance that they obtain on their respective properties shall contain an appropriate provision whereby the insurance company, or companies, consent to the mutual release of liability contained in this paragraph.

Paragraph 10 of the leasehold contracts provides as follows:

10. PERSONAL PROPERTY. LESSOR shall not be liable for any loss or damage to any merchandise or personal property in or about the premises, regardless of the cause of such loss or damage.

In their initial motions, defendants argue that full effect should be given to the exculpatory provisions because the leasehold contracts were fairly bargained for by the parties, there was no unconscionable disparity in bargaining power between them, and the exculpatory provisions are acceptable allocations of risk agreed to by business parties standing on equal footing in a commercial setting. Defendants rely on several Kansas cases that recognize that mentally competent parties may make contracts on their own terms and fashion their own remedies provided that the agreement is not illegal, contrary to public policy, or obtained by fraud, mistake, overreaching or duress. *See Corral v. Rollins Protective Services Co.*, 240 Kan. 678, 732 P.2d 1260 (1987); *Kansas City Structural Steel Co. v. L.G. Barcus & Sons, Inc.*, 217 Kan. 88, 535 P.2d 419 (1975); *Kansas Power*

*& Light Co. v. Mobil Oil Co.,* 198 Kan. 556, 426 P.2d 60 (1967).

■  Safeway argues that the exculpatory provisions in the leasehold contracts are contrary to public policy. A contractual provision is contrary to public policy " 'if it is injurious to the interests of the public, contravenes some established interest of society, violates some public statute, or tends to interfere with the public welfare or safety.' " *Deines v. Vermeer Mfg. Co.,* 752 F.Supp. 989, 997 (D.Kan.1990) (quoting *Coleman v. Safeway Stores, Inc.,* 242 Kan. 804, 808, 752 P.2d 645, 647–48 (1988)). The court has reviewed applicable Kansas cases on the issue and concludes that the lease provisions at issue are not injurious to the public interest, do not contravene an established interest to society, do not violate a public statute, and do not tend to interfere with the public welfare or safety. In *Talley v. Skelly Oil Co.,* 199 Kan. 767, 433 P.2d 425 (1967) the Kansas Supreme Court stated:

> As a general rule, an exculpatory clause in a lease voluntarily executed between parties standing on equal footing, under the provisions of which clause the lessee agrees to indemnify the lessor against risk, loss, damage or injury occurring on the leased premises during the terms of the lease, whether or not caused by the lessor's negligence, is a valid clause and enforceable between the parties themselves.

*Id.* at 767, 433 P.2d 425 (Syl. ¶ 1).

Furthermore, Kansas courts have held an exculpatory clause in a lease of land relieving lessor from liability for injury or damage by fire, even if caused by lessor's negligence, was not contrary to Kansas public policy. *See Anderson v. Union Pacific R. Co.,* 14 Kan.App.2d 342, 347, 790 P.2d 438, 441 (1990).

■  Safeway also argues that the exculpatory provisions do not apply because the leasehold contract between Safeway and defendants governs the relationship between the parties only as to the premises described in the lease, and defendants' alleged negligence occurred outside the leased premises. The court does not believe such a conclusion is warranted. The plain language of the exculpatory provisions focuses on the location of the property which is damaged, not on the situs of the fire or of defendants' allegedly negligent conduct. Safeway relies on a line of cases disallowing exculpatory provisions where disputes involved whether the damages incurred arose within the ambit of the landlord-tenant relationship. *See Puro Intern. of New Jersey Corp. v. California Union Ins. Co.,* 672 F.Supp. 129 (S.D.N.Y.1987); *W.F. Zimmerman, Inc. v. Daggett & Ramsdell, Inc.,* 34 N.J.Super. 81, 111 A.2d 448 (1955); *Smith v. Faxon,* 156 Mass. 589, 31 N.E. 687 (1892). In the present case, although the fire did not start in Safeway's leased space, all of defendants' purported duties to Safeway arise out of defendants' legal relationship to Safeway as a landlord.[2] The court therefore finds the cases relied upon by Safeway to be distinguishable from the present situation.

■  Safeway also argues that the exculpatory provisions of the leasehold contracts cannot limit damages resulting from defendants' gross negligence or willful or wanton conduct. The court thoroughly analyzed this issue in its September 9, 1993 Memorandum and Order regarding the record storage contracts and concluded that any attempt by a party to limit its damages for gross negligence or willful or wanton conduct would be void as against public policy. Therefore, the exculpatory provisions of the leasehold contracts are deemed invalid to the extent they could be read to limit defendants' liability for this type of conduct.

■  Safeway next argues that the exculpatory provisions should not be enforced because defendants may not contract for the release of their future negligence due to their status as a warehouseman or professional bailee. The Kansas Uniform Commercial

---

**2.** Other jurisdictions have enforced exculpatory provisions in leases where the allegedly negligent act occurred outside the specific area leased by plaintiff. *See Topp Copy Products, Inc. v. Singletary,* 533 Pa. 468, 626 A.2d 98 (1993); *Jackson v. First Nat'l Bank of Lake Forest,* 415 Ill. 453, 114 N.E.2d 721 (1953); *Commercial Union Assur. Co. v. Foley Bros.,* 141 Minn. 258, 169 N.W. 793 (1918).

Code ("UCC") defines a warehouseman as "a person engaged in the business of storing goods for hire." *See* K.S.A. § 84–7–102(h). In the court's Memorandum and Order dated September 9, 1993, the court held that the parties' freedom of contract, including certain risk allocation provisions, was constrained by the provisions of Article 7 of the UCC due to defendants' status as a "warehouseman" as defined under the UCC. Thus, the court found that the damage limitation provisions of the record storage contracts executed between the parties were not enforceable because they conflicted with K.S.A. § 84–7–204, which sets forth the applicable duty of care imposed on a warehouseman and also provides a method for a warehouseman to limit its liability for a breach of such duty.

The court finds that, unlike the situation presented with the record storage contracts, defendants do not qualify as a "warehouseman" under the leasehold contracts which are at issue in these motions.[3] The plain terms of the leasehold contract executed by defendants and Safeway create a landlord tenant relationship. The payment made by Safeway to defendants is dependent solely upon the space rented by Safeway, and is in no way dependent upon the amount of goods stored on the premises by Safeway or, indeed, whether Safeway stores goods on the premises at all.[4] Rather than "storing goods for hire," as required under the warehouseman definition, defendants in the leasehold contracts with Safeway are merely renting space in a landlord-tenant relationship.

Furthermore, the court finds that the public policy considerations for constraining the ability of warehousemen to limit their liability for violating their duty of care do not apply in the leasehold contract situation between Safeway and defendants. The nonvariable rules contained in Chapter 7 of the UCC prevent storers from overreaching their customers and discriminating against them. *See* White & Summers, Uniform Commercial Code, Vol. II, § 21–2 (3d ed. 1988). They are also intended to cover the related risks that goods will be lost, de-

stroyed or damaged while in the warehouseman's hands or that the warehouseman will, for whatever reason, not be able to deliver up the goods when demanded. *Id.* at § 21–3. These concerns are not applicable to the leasehold relationship between defendants and Safeway. Unlike the traditional warehouse relationship, where the storer of goods relinquishes the goods to the warehouseman and thus has no control over their safety, in the present situation the lease contains no terms limiting Safeway's access to any stored goods. Safeway could have taken whatever steps it felt necessary to ensure the safety of its goods within its leased space.

Safeway's final argument is that the exculpatory provisions contained in the leasehold contracts are vague and ambiguous and should therefore be construed by the court as unenforceable. Upon careful examination of the language contained in paragraphs 10 and 16, the court agrees with Safeway that the two paragraphs do seem to conflict. Paragraph 16 appears to be a variant of standard waiver of subrogation language commonly used in commercial leases, whereas paragraph 10 appears to give defendants an even more expansive release from liability for loss to personal property or merchandise. It is unclear from reading these provisions together whether the parties intended in the event of a fire for the blanket release of liability to apply or whether they intended the more limited release to the extent of insurance coverage to apply. Moreover, the language excepting from the release "loss or damage occasioned by willful, wanton or premeditated negligence," which is present in paragraph 16 but not in paragraph 10, poses a problem in interpretation and appears to create another possible inconsistency. Neither party provides a persuasive argument to assist the court in harmonizing these two clauses. However, merely because provisions are ambiguous or inconsistent does not automatically render them a "nullity," as Safeway suggests. Rather, the court must exercise its power to construe the terms of the agreement as a whole and in a

---

**3.** Consequently, the defendants' ability to contractually limit their liability is not subject to the constraints of K.S.A. § 84–7–204.

**4.** Portions of the space leased by Safeway were in fact subleased to other tenants.

manner that gives effect to the mutual intention of the parties. *See Texaco, Inc. v. Holsinger,* 336 F.2d 230, 233 (10th Cir.1964). "A cardinal rule in the interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention if the intention is consistent with legal principles." *Garvey Center, Inc. v. Food Specialties, Inc.,* 214 Kan. 224, 229, 519 P.2d 646 (1974). When a contract is plain and unambiguous, the parties' intent should be determined from the instrument. *See Hollenbeck v. Household Bank,* 250 Kan. 747, 751, 829 P.2d 903 (1992). However, where ambiguity or uncertainty is involved, the intention is not ascertained by literal interpretation, but by considering all language employed, the circumstances existing when the agreement was made, the object sought to be obtained, and other circumstances, if any, which tend to clarify the real intention of the parties. *See Amortibanc Inv. Co., Inc. v. Jehan,* 220 Kan. 33, 43, 551 P.2d 918 (1976). Because the court presently has no evidence before it regarding the circumstances existing when the leasehold contract was made, or any other information that would tend to clarify the real intention of the parties, other than the language contained in the leasehold contract itself, the court will defer ruling on the interpretation of the exculpatory language until the parties have had a chance to present evidence at trial regarding the parties' intent.

The remainder of defendants' motions deal with liability arguments. At a status conference conducted September 2, 1992, the court informed the parties of its intention that all liability related summary judgment questions be resolved in a later wave of dispositive motions, for which the court had set a December 1, 1993 deadline. The court indicated at the status conference that plaintiffs need not respond to any non-liability assertions in defendants' present motions and that defendants should reassert those arguments in the dispositive motions to be filed by the December 1, 1993 deadline. Consequently, the liability arguments contained in the motions dealt with here are denied as premature, without prejudice to their re-assertion in a subsequent motion.

## V. Conclusion

IT IS, THEREFORE, BY THE COURT ORDERED THAT Defendants' motions for summary judgment or, in the alternative, for partial summary judgment (Doc. # 25 in case no. 92–2458–JWL; Doc. # 24 in case no. 93–2024–JWL; and Doc. # 12 in case no. 93–2067–JWL) are granted in part and denied in part. The motions are granted as to the enforceability of the exculpatory provisions contained in the leasehold contracts. The liability arguments are denied as premature, without prejudice to their re-assertion in a subsequent motion.

IT IS SO ORDERED.