TOMKINS INDUSTRIES, INC., RUSKIN
MANUFACTURING DIVISION,
Plaintiff,

v.

SHEET METAL WORKERS' INTERNA-
TIONAL ASSOCIATION, LOCAL
NO. 2, et al., Defendants.

Civ. A. No. 94–2448–GTV.

United States District Court,
D. Kansas.

Oct. 5, 1995.

Michael F. Delaney, Aaron C. Johnson, Spencer, Fane, Britt & Browne, Kansas City, MO, for Tompkins Industries Inc.

Peggy A. McNeive, McNeive Law Firm, Kansas City, KS, for Sheet Metal Workers' International Association, Local No. 2, William Brynds, Jed Head.

### MEMORANDUM AND ORDER

VAN BEBBER, District Judge.

#### I. Introduction

This case involves a dispute between a labor Union and an employer regarding the use of Union labels on products manufactured by the employer. Plaintiff, Tomkins Industries, Inc., filed a motion for injunction and temporary restraining order (Doc. 1) on November 8, 1994. Plaintiff seeks injunctive relief which would prohibit the Union from withholding the Union label except when the company was in violation of the collective bargaining agreement. At a hearing held on November 10, 1994, the court denied the plaintiff's motion for temporary restraining order. A preliminary injunction hearing was held on December 9, 1994. At the conclusion of the hearing, the court denied plaintiff's request for a preliminary injunction. A trial to the court on the merits of the case was held on April 5, 1995. The record on which the case was submitted to the court includes the testimony and evidence received at the trial and the previous hearings, pursuant to Fed.R.Civ.P. 65(a)(2). The court has now considered all the evidence and briefing submitted by the parties and is prepared to rule. For the reasons stated herein, the court denies plaintiff's request for a permanent injunction on two bases. First, plaintiff has not succeeded on the merits of its claim. Second, plaintiff has not established that it has been or will be injured by defendants' denial of the use of Union labels.

Pursuant to Fed.R.Civ.P. 52(a), the court makes the following findings of fact and conclusions of law.

#### II. Findings of Fact

1. Plaintiff Tomkins Industries Inc., Ruskin Manufacturing Division (Tomkins), an Ohio Corporation, operates manufacturing plants in Parsons, Kansas and Galesburg, Kansas.

2. Plaintiff manufactures air handling equipment including fire dampers, control dampers and louvers which are sold primarily in industrial and commercial markets.

3. Plaintiff's products are sold through three regional sales managers to independent representatives across the country. These representatives in turn sell the products to sheet metal contractors who actually install the products. The employees of the sheet metal contractors are predominately unionized.

4. Defendant Sheet Metal Workers International Association Local No. 2 (Local No. 2) is an unincorporated labor organization which maintains offices in Kansas City, Missouri and Parsons, Kansas.

5. Defendant Local No. 2 is the collective bargaining representative for a group of employees of plaintiff engaged in the manufacture, fabrication and assembly of sheet metal products manufactured at plaintiff's facilities in Parsons, Kansas and Galesburg, Kansas.

6. Defendant Local No. 2 entered into a collective bargaining agreement effective September 29, 1992, with Plaintiff that was in effect until its expiration on September 29, 1995.

7. During the relevant time periods, plaintiff's production facilities have qualified

as a Union shop due to the existence of the collective bargaining agreement and the payment of Union wages.

8. Defendant William Brynds was the business representative for Local No. 2 from July 1, 1991 to April 4, 1995. As the business representative Mr. Brynds' responsibilities included assisting employees and Union stewards in filing grievances, participating in processing disputes involving employees at the plants, and enforcing the collective bargaining agreement.

9. J. Michael Krasovec was the business representative for Local No. 2 from July 1976 to October 1990.

10. Defendant Jerold "Jed" Head was employed by plaintiff and has acted as a Union steward since 1993. As a steward, Mr. Head helps police the collective bargaining agreement contract and files grievances on behalf of employees.

11. During the time periods relevant to this action, Delmar Fisher was the Parsons plant manager and acted as a management representative of plaintiff.

12. Anthony Biguglielmo, Robert Hesse, and John F. Heilmann are manufacturer's sales representatives of plaintiff's products.

13. Article XXII of the collective bargaining agreement between plaintiff and defendant Local No. 2 states as follows:

During compliance with all the provisions of this Agreement, the Company shall display the appropriate Union Label of the Sheet Metal Workers' International Association on all items produced exclusively under the terms of this Agreement. The Company agrees that all Union Labels shall be the property of the Union and said permission to display the Union Label may be revoked upon default of the Contract by the Company.

14. Union labels are obtained by the Financial Secretary of Local No. 2 from the Sheet Metal Workers' International Association. The Financial Secretary distributes the Union labels to Business Representatives. The Union labels are serialized by consecutive numbers and a record of the numbers are kept by Local No. 2. The Business Representative distributes the Union labels to the Union Stewards at each plant. The stewards sign a receipt for the Union labels and distribute them to employees who affix the labels to the products.

15. The Constitution and Ritual of the Sheet Metal Workers' International Association, Article Twenty–Five states in pertinent part:

SEC. 1. The General Secretary–Treasurer shall have prepared and registered a trade mark label to be known as the Official Union Label, and said union labels shall be for the use of local unions and good standing members thereof in the manner and within the limitation specified in this Constitution. Union labels shall be of such design, material, or method of application as may be determined by the General Secretary–Treasurer with the approval of the General Executive Council, provided that each union label identify, by serial number or otherwise, the local union to which it was issued.

\*　　\*　　\*　　\*　　\*　　\*

SEC. 3. Local unions shall require a strict accounting of all union labels issued by them for use by good standing members thereof and shall require the return of all unused union labels.

SEC. 4. The use of union labels of this Association is limited to strictly union-made products, manufactured, assembled and fabricated by none but good standing members of a local union affiliated with this International Association and all members must recognize such union label. No local union label of this Association shall be applied to any sheet metal work that has not been so manufactured, assembled and fabricated.

\*　　\*　　\*　　\*　　\*　　\*

SEC. 6. Union labels shall remain at all times the property of the local union, and shall at no time be issued or distributed in any manner that will permit or afford opportunity for them to be used by any other than a member in good standing, provided that if the union label is permitted to be used in a manner not authorized by this

Constitution it may be withdrawn by the General President.

16. A Union label signifies to the people installing a product that it was made by Union labor.

17. The Union's business representatives have withheld Union labels from the plant or portions of the plant on at least seven occasions, including the withdrawal which caused the filing of the present adversarial proceeding. The labels were pulled for a variety of reasons including employee grievances, payroll problems and for non-payment of Union dues by employees.

18. On October 31, 1994, defendant Brynds withheld the Union labels from the Parsons plant in support of a grievance filed by an employee, John Garretson, and to encourage the company to strike arbitrators in three pending grievances. Garretson had refused to pay Union dues.

19. Defendant Brynds told Delmar Fisher, plaintiff's management representative, that he was pulling the labels because John Garretson had refused to pay his Union dues.

20. In response to the withdrawal of the Union labels on October 31, 1994, plaintiff Tomkins filed the present action on November 8, 1994.

21. The Union labels were returned to the plant on or about January 12, 1995. The parties had settled the matters which originally lead to the labels being pulled on October 31, 1994.

22. Plaintiff shipped approximately 2.5 million dollars in product from the Parsons plant in November and the first two weeks in December 1994. This is approximately the same volume of sales the plant shipped in similar prior periods.

23. No installation contractors have contacted plaintiff regarding the absence of Union labels on plaintiff's products during the time period from October 31, 1994 to January 12, 1995.

24. None of plaintiff's products were returned during the time the period the Union withheld the Union label from plaintiff's products.

25. Manufacturer's sales representatives of plaintiff's products estimated that plaintiff's sales would drop considerably if its products did not have Union labels.

26. The Union's right to withhold Union labels from plaintiff's production facilities is a dispute that is ongoing and likely to recur.

## III. Conclusions of Law

### A. Jurisdiction

■ The court has jurisdiction under Section 301 of the Labor–Management Relations Act, 29 U.S.C. § 185(a), over suits for violation of contracts between an employer and a labor organization representing employees. The collective bargaining agreement between plaintiff and defendants does not require arbitration of this dispute. The collective bargaining agreement provides that a arbitrable grievance is "any difference raised by an employee, group of employees, or the Union, with the Company involving the interpretation or application of the terms and provisions of the [Collective Bargaining] Agreement." Collective Bargaining Agreement, Art. XI, § 2. Thus, the agreement does not provide for arbitration of a dispute raised by the employer.

■ The Norris–LaGuardia Act, 29 U.S.C. § 101 *et seq.*, deprives federal courts of jurisdiction to enter injunctions "in any case involving or growing out of any labor dispute." The Act enumerates specific types of acts not subject to injunctions, including labor strikes and the organization of a Union workforce. 29 U.S.C. § 104.

A "labor dispute" is defined in the Act as any controversy concerning terms or conditions of employment or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee.

29 U.S.C. § 113(c). "The critical element in determining whether the provisions of the Norris–LaGuardia Act apply is whether 'the employer-employee relationship [is] the matrix of the controversy.'" *Jacksonville Bulk*

*Terminals v. International Longshoremen's Ass'n,* 457 U.S. 702, 712–13, 102 S.Ct. 2672, 2680, 73 L.Ed.2d 327 (1982) (quoting *Columbia River Packers Ass'n v. Hinton,* 315 U.S. 143, 147, 62 S.Ct. 520, 522, 86 L.Ed. 750 (1942)) (alteration in original); *International Union, UAW v. Mack Trucks, Inc.,* 820 F.2d 91, 97–98 (3d Cir.1987) (Norris–LaGuardia Act is not a complete bar to injunctive relief; not every disagreement about the terms of the collective bargaining agreement is a "labor dispute").

The court concluded at the hearing held on December 9, 1994, that the removal of Union labels by the Union did not trigger application of the Norris–LaGuardia Act for two reasons. First, the injunction requested by the employer does not seek to enjoin one of the acts enumerated in § 104. Second, the court determined that the disagreement over the removal of the Union labels is not a labor dispute as defined in the Act. The court, therefore, has jurisdiction to grant injunctive relief in the present case if plaintiff prevails.

*B.   The Collective Bargaining Agreement*

■   Plaintiff seeks injunctive relief based upon Article XXII of the collective bargaining agreement which addresses the company's use of the Union label. Plaintiff asserts that the Union's withdrawal of the Union label violates Article XXII because the Union acted without an arbitrator's ruling that plaintiff is in violation of the collective bargaining agreement. In addition, plaintiff asserts that the Union cannot revoke its permission to display the Union label because an employee has failed to pay Union dues.

■   A fundamental principle of contract construction is that a court should interpret the contract so as to give effect to the mutual intentions of the parties at the time they entered into the contract. *Butler Manuf. Co. v. Americold Corp.,* 841 F.Supp. 1107, 1112 (D.Kan.1993). "When a contract is plain and unambiguous, the parties' intent should be determined from the instrument." *Id.* A court may not alter a contract and ignore the plain meaning of its terms under the guise of contract construction. *Hart v. Sprint Communications Co.,* 872 F.Supp. 848, 855 (D.Kan.1994).

The court has considered the evidence and plaintiff's arguments and concludes that plaintiff's interpretation of the collective bargaining agreement is not supported by the contract language. Although the agreement provides that the company "shall display the Union label," it does not place any duty on the Union to provide the company with Union labels. Collective Bargaining Agreement, Art. XXII. The agreement states that the Union retains ownership of the label and that it "may" revoke its permission to display the label upon default of the contract by the company. The language does not limit the revocation of permission to display the label to situations in which the company is in default.

■   In addition, the Union's constitution provides that the use of the Union label is limited to strictly union-made products by none but good standing members of a local Union. The Union believes this provision provides that the product must be made by a one hundred percent union workforce. The Union takes the position that if a member fails to pay Union dues, then the label must be pulled from the products which the non-union worker makes. Courts generally give deference to the Union's interpretation of its own constitution and will not invalidate the Union interpretation unless it is unreasonable. *Newell v. I.B.E.W.,* 789 F.2d 1186, 1189 (5th Cir.1986).

The court finds that under the plain language of the contract, the Union can withhold the Union label for any reason it deems appropriate. The court concludes that regardless of the reason for the Union's withdrawal of the Union label in this instance, the Union had the right to do so under the collective bargaining agreement and its constitution. Plaintiff has failed to prevail on the merits of the case. Thus, plaintiff is not entitled to injunctive relief on this basis.

*C.   Permanent Injunctive Relief*

■   Even if plaintiff's interpretation of the collective bargaining agreement is correct and the Union has wrongfully withheld Union labels, plaintiff is not entitled to a

permanent injunction because it has failed to establish injury.

 The Tenth Circuit Court of Appeals has set forth the standard for the district court's issuance of a permanent injunction:

A permanent injunction is appropriate when the remedy at law is inadequate to compensate the injury sustained. The classic remedy for breach of contract is the award of monetary damages. However, if damages at law cannot adequately compensate the injury sustained from the breach or cannot be reasonably measured, then the remedy at law is inadequate and injunctive relief providing for specific performance may be appropriate because of irreparable injury.

*Tri–State Generation and Transmission Ass'n v. Shoshone River Power Inc.*, 874 F.2d 1346, 1354–55 (10th Cir.1989).

In support of its request for a permanent injunction, plaintiff provided testimony from company officials and three manufacturing representatives regarding the injury to the company caused by the withdrawal of the Union label. Each of the witnesses testified that the company would lose a high percentage of its sales if the Union label was not affixed to its products. Plaintiff's management representative, Delmar Fisher, testified, however, that the company's sales had not decreased during the time the Union labels were absent from its products. In addition, the three manufacturer's representatives of plaintiff's products testified in their depositions that none of the company's products had been returned during that time period. The representatives also testified that if the unionized installers noticed that the product was without a Union label, they would contact the company to determine if the product was produced by a Union shop. If the product was so produced, then they would proceed to install the equipment in the absence of a Union label.

Based on the evidence received at the hearings and trial, plaintiff has not established that it has or will suffer injury which would entitle it to injunctive relief. Plaintiff's claim of an inadequate remedy at law and irreparable harm is too speculative to permit injunctive relief. The court views plaintiff's assertion that it will lose sales without the Union label as speculative because it has failed to present any evidence that sales were lost during the time periods when the Union label was not affixed to the products. Even if plaintiff is correct in its estimates that it will lose future sales, it has not established that monetary damages would not provide an adequate remedy. In addition, the testimony has established that the absence of the Union label is not as important to Union installers as the fact that the product was made in a Union shop.

For the foregoing reasons, the court concludes that plaintiff is not entitled to injunctive relief in this action.

IT IS, THEREFORE, BY THE COURT ORDERED that judgment be entered in accordance with the findings and conclusions contained in this Memorandum and Order.

**IT IS SO ORDERED.**