# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1562

_____

Robert Young; Ethel Young,

      Appellants,

v.

Allstate Insurance Company,

      Appellee.

\*
\*
\*
\*
\*    Appeal from the United States
\*    District Court for the
\*    Eastern District of Missouri.
\*
\*
\*

_____

Submitted:  December 14, 2011
Filed:  July 24, 2012

_____

Before WOLLMAN, MELLOY, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Robert and Ethel Young appeal the district court's grant of summary judgment in favor of Allstate Insurance Company ("Allstate"). The Youngs filed this action to recover for losses sustained after a fire damaged their home. Allstate denied the Youngs' insurance claim, asserting that the Youngs misrepresented material facts regarding their losses. The district court granted summary judgment for Allstate. We conclude that there are genuine issues of fact for trial, and we therefore reverse.

We recite the facts in the light most favorable to the Youngs. The Youngs' home and personal property were insured under a policy issued by Allstate. The policy provided that Allstate would "not cover any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance."

On January 11, 2008, a fire broke out in the Youngs' garage, damaging or destroying many of its contents. The Youngs submitted to Allstate an eleven-page inventory of personal property that was allegedly damaged or destroyed in the fire. The Youngs' adult daughter, Sonji, prepared the inventory based on her memory of what she had seen while living with the Youngs. Although the Youngs signed and dated each page of the inventory, they did not carefully review it before doing so.

On January 22, 2008, the Youngs met at their home with Allstate representative Carlita Barnes. According to the Youngs, the purpose of this meeting was not to review the property inventory, and Barnes never showed the Youngs a copy of the inventory during this meeting.

On January 28 and February 6, 2008, Allstate Staff Claims Supervisor Russell Crowder took recorded statements from the Youngs. During these meetings, Crowder and the Youngs discussed various items on the inventory. The Youngs explained where they had purchased certain items and where they were stored in the garage at the time of the fire. Although the Youngs never directly told Crowder that their daughter prepared the inventory, their statements indicated that they had assistance. For example, when questioned about a particular item, Ethel told Crowder that her daughter "knew more about what was in [the garage] than I did, so she probably knows . . . what that [item] was." In a third meeting, on February 12, 2008, the Youngs told Crowder that they wanted to remove several items from the inventory.

Robert told Crowder that the Youngs would not remove any other items from the list, and that he was going to go "back in [the garage] and do some digging myself."

On March 26, 2008, the Youngs submitted to Allstate a revised property inventory. The Youngs informed Allstate that their daughter had prepared the initial inventory, and after carefully reviewing the list and looking through the debris at their home, they discovered that numerous items included on the initial inventory were not in the home during the fire. The following day, Allstate took the Youngs' examinations under oath. During their examinations, the Youngs admitted that the initial inventory included numerous items that were not damaged or destroyed in the fire. The Youngs offered various explanations for the discrepancies. For example, Robert testified that his son cleaned the garage shortly before the fire and returned several borrowed items to their owners. Ethel recalled that the Youngs had sold a listed bicycle in a garage sale. Ethel also admitted in her examination that the value of several items was overstated on the initial inventory. Robert denied that he had intentionally overstated the claim to Allstate.

On April 28, 2008, Crowder informed the Youngs that Allstate was denying their claim. Allstate said that its investigation had revealed that the Youngs "concealed and/or misrepresented material facts" regarding their inventory forms and the ownership, amount, and value of property allegedly destroyed or damaged by the fire.

The Youngs filed suit against Allstate for breach of contract and vexatious refusal to pay. Allstate asserted affirmative defenses, including its claim that the Youngs had misrepresented the ownership, amount, and value of personal property damaged or destroyed in the fire. Allstate also filed a counterclaim seeking a declaratory judgment that the policy was void due to the Youngs' "concealment, misrepresentation, and/or fraud" in presenting their claim.

-3-

The district court granted summary judgment for Allstate. The court reasoned that the Youngs, by signing the initial inventory, were held to have knowledge of its contents. The court also noted that the Youngs had an opportunity to change the inventory during meetings with Allstate representatives, yet failed to submit a revised inventory until just before their examinations under oath. In sum, the court ruled that "no reasonable juror could conclude that [the Youngs] did not materially misrepresent their property claim."

## II.

We review the district court's grant of summary judgment *de novo*, viewing the evidence and drawing all reasonable inferences in the light most favorable to the Youngs, the nonmoving party. *Kirkeberg v. Canadian Pac. Ry.*, 619 F.3d 898, 903 (8th Cir. 2010). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

On appeal, the Youngs contend that the district court erred in granting summary judgment for Allstate without considering whether the Youngs submitted the initial inventory with an intent to deceive Allstate. The Youngs assert that they reasonably relied on their daughter to prepare the inventory, and that they gave credible explanations for how the inventory was prepared and why they did not notice and correct the errors sooner. The Youngs also argue that the district court erred in holding that the Youngs are conclusively bound by their signatures on the initial inventory and could not later revise or explain the inaccuracies.

The Youngs' insurance policy excludes coverage if an "insured person has concealed or misrepresented any material fact or circumstance." Under Missouri law, "a misrepresentation as to a portion of the loss may void coverage to the entire claim." *Childers v. State Farm Fire & Cas. Co.*, 799 S.W.2d 138, 141 (Mo. Ct. App.

-4-

1990).  As we have recognized, however, misrepresentation under Missouri law "requires an intent to deceive." *United Fire & Cas. Co. v. Historic Pres. Trust*, 265 F.3d 722, 731 (8th Cir. 2001) (citing *Gould v. MFA Mut. Ins. Co.*, 331 S.W.2d 663, 669 (Mo. Ct. App. 1960)).  We conclude that there is a genuine issue of fact about whether the Youngs intended to deceive Allstate.

Under Missouri law, a person who has an opportunity to read a document but signs it without doing so is held to have knowledge of its contents.  *United States ex rel. Bussen Quarries, Inc. v. Thomas*, 938 F.2d 831, 833 (8th Cir. 1991).  But knowledge of the contents of a document that contains false information does not necessarily establish an intent to deceive. "Proof of a mere naked falsehood or misrepresentation ordinarily is not enough" to void an insurance policy, because it "is firmly established [that] the existence of a fraudulent intent or an intent to deceive is an indispensable element." *Cohen v. Metro. Life Ins. Co.*, 444 S.W.2d 498, 505 (Mo. Ct. App. 1969).  If an insured knows, for example, that a document says an object was in a home during a fire, and the insured *genuinely believed* that the object was in the home, then proof that the object was elsewhere during the fire does not establish that the person intended to deceive the insurer. *Cf. In re Smith*, 749 S.W.2d 408, 413 (Mo. 1988) (holding in a different context that constructive knowledge of a document's contents does not rise to the level of affirmative deceit or fraud).

Missouri law also does not establish that the Youngs are "conclusively bound" by the representations made in the initial inventory.  An insured may contradict or explain the inventory at trial, and the credibility of the insured is typically a question of fact for the jury. *See Parks v. Md. Cas. Co.*, 91 S.W.2d 1186, 1192 (Mo. Ct. App. 1936) (stating that statements in a proof of loss bind the insured "unless they are contradicted or explained at trial"); *see also* 13 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance*, § 197:14 (3d ed. 2005) ("As a general rule, statements made in proofs of loss . . . are not conclusive as to the claimant, provided they were made in good faith and without an intent or attempt to defraud the insurer.").

Our decision in *Liberty Mutual Fire Insurance Co. v. Scott*, 486 F.3d 418 (8th Cir. 2007), is not to the contrary. *Scott* held that an insured's material misrepresentation regarding her personal property—reflected in discrepancies between an insurance proof of loss and a bankruptcy petition—voided the insured's coverage for fire losses. 486 F.3d at 422-23. We noted, however, that the insured presented no evidence "that the insurance proof of loss amounts resulted from mistake or were otherwise inadvertent," and that the only reasonable inference was that the insured made a material misrepresentation to the insurer. *Id.* at 423. Unlike the insured in *Scott*, the Youngs have presented evidence that the discrepancies on the initial inventory were a result of mistake or inadvertence, and therefore not the product of an intent to deceive Allstate.

Allstate contends that summary judgment was nonetheless proper on alternative grounds, because there is "overwhelming evidence" that the Youngs intended to deceive Allstate. The evidence certainly would support a verdict for Allstate, but we are not convinced that there is no genuine issue for trial regarding the intent of the insured.

There is evidence from which a jury could conclude that the Youngs' daughter prepared the initial inventory, and that the Youngs did not carefully review it before signing. Robert testified that he "hadn't really been back in" the garage between the time of the fire and signing the initial inventory. He stated that Sonji "had made the list up," that he was "disgusted about the whole fire," and that he did not review the inventory. According to Ethel, Sonji "just started compiling what she had seen" while living with the Youngs, and prepared the inventory before they had "done any digging or anything." Ethel stated that she merely "glanced at" the inventory, acknowledging that the Youngs "should have reviewed it closer." According to the Youngs, they did not discover errors on the initial inventory until they were able to review the inventory carefully and go through the debris at their home. A jury may

-6-

or may not find these explanations credible, but we cannot resolve the issue as a matter of law.

Allstate also relies on the Youngs' meetings with claims supervisor Crowder, but these encounters also leave genuine issues for trial. Although Crowder questioned the Youngs about several items on the initial inventory that were not in the garage during the fire, and the Youngs confirmed the accuracy of the inventory, the Youngs contend that they had not yet inspected the debris at their home at the time of these meetings. Consistent with the Youngs' claim, Robert stated at the third meeting with Crowder on February 12, 2008, that he had not been in the garage, and that he was going to go "back in there and do some digging myself." Approximately six weeks later, the Youngs submitted a revised inventory, explaining that they had since been able to "more carefully review the initial list and to go through the debris at their home." Whether the Youngs really were ignorant of what was lost in the fire at the time of the Crowder interviews, or whether they simply revised the inventory after realizing that they were caught in making intentional misrepresentations is an issue for a finder of fact.

The Youngs also provided explanations for a number of the discrepancies, which, if believed by a jury, would support a finding that the Youngs did not intend to deceive Allstate. Robert explained that his son cleaned the garage shortly before the fire and removed several items, including a generator, floor polisher, welder, and paint sprayer. Robert also stated at his examination that a listed guitar—which the Youngs removed from the inventory on February 12, 2008—had been stolen several years before, and a different guitar was destroyed in the fire. Ethel explained that two bicycles listed on the initial inventory were not in the garage during the fire. According to Ethel, her grandson had one of the bicycles and, "after [the Youngs] started digging," she remembered that another had been sold in a garage sale. Allstate points to a contradiction between Ethel's statement at her examination that the Youngs withdrew their claim about a wicker patio set, because the Youngs were

"not familiar" with it, and Allstate's report that Ethel told Allstate representative Barnes that the Youngs' daughter had purchased a "wicker dinette set" for them "years ago when she graduated college." But the Youngs were not questioned about this apparent discrepancy, and we see it as another matter that must be considered by a jury in determining whether the Youngs intended to deceive the insurer by misrepresenting a material fact.

Allstate also argues that summary judgment was proper because the Youngs misrepresented the value of property damaged or destroyed in the fire. The Youngs acknowledge that the value of some items was overstated on the initial inventory. Ethel explained that because Sonji compiled the list based on what she had seen in the garage, Sonji was unable to price certain items and resorted to seeking prices from the Internet. Sonji also incorrectly listed the original price for a gas-powered scooter that was purchased used, and listed the price for an entire drill set, rather than an individual drill destroyed in the fire. As with the Youngs' other alleged misrepresentations, whether these discrepancies were due to mistake or inadvertence or the Youngs' intent to deceive Allstate must be resolved by a finder of fact.

\*　　\*　　\*

For the foregoing reasons, the judgment of the district court is reversed, and the case is remanded for further proceedings.

_____